HOKE et al., Appellants, v. CENTRAL TOWNSHIP FARMERS' CLUB et al.

Division Two, March 6, 1906.

1. **INSTRUCTIONS: Motion for New Trial.** Unless the attention of the court was called in the motion for new trial to its action in giving certain instructions and refusing others, any error in the instructions given or in refusing those asked but not given, will not be considered on appeal.

2. **LIMITATIONS: Entry: Meaningless Statute.** Section 4263, Revised Statutes 1899, provides that "no entry upon lands, tenements or hereditaments shall be sufficient or valid as a claim, unless an action be commenced thereon within one year after the making of such entry, and within ten years from

the time when the right to make such entry descended or accrued." *Held*, that, as applicable to the limitation of ten years, this section is meaningless, and fails to provide any new or additional remedy, and the limitation is neither extended nor abridged thereby.

3. ———: **Trustees of Church: Date of Deed.** Where the trustees of a church sold and conveyed property, limited by the grant to them to church uses,to one of their number, and thereby the condition was broken, and he sold it to the defendants by a deed dated more than ten years prior to the bringing of the suit by the original grantor's heirs, and those heirs did not during those ten years by some unequivocal act assert a right to the land, or otherwise declare a forfeiture, their suit in ejectment is barred.

4. ———: ———: **Forfeiture: Reclamation.** Conditions subsequent are not favored in the law and are construed in favor of· the grantee. And where land was deeded to trustees for church uses and afterwards sold to a private citizen, the grantor must by some positive act, either by bringing suit or otherwise, manifest his intention to reclaim the property. And if he does not do that within ten years, his suit is barred.

Appeal from St. Louis County Circuit Court.—*Hon. Jno. W. McElhinney*, Judge.

Affirmed.

*J. P. Vastine* for appellants.

Before the court permits the loss of land through mere possession, a technicality, the law should be rigidly applied. Huckshoon v. Hartwig, 81 Mo. 648. James Miller became trustee under deed of Hoke in 1852, and continued such to September, 1892, and a trustee of the church to November 14, 1895. The possession by Miller and defendants prior to suit was over ten years, and the question arises, should Miller's holding for one year be counted, and was it adverse? Respondents held realty less than ten years. The deed of Hoke was made to· James Miller et al., trustees. To

enable a trustee, without giving up the possession, to turn it into an adverse holding, against the *cestui que trust*, the evidence must be clear and unmistakable, and such adverse claim must be brought home to him beyond question or doubt, not theoretically or constructively, but actually. Goodwin v. Goodwin, 69 Mo. 617; Bender v. Zimmerman, 80 Mo. App. 144; Hill on Trustees, p. 264. The relation of trust is presumed to continue until open and pronounced hostility thereto. Hunnewell v. Adams, 153 Mo. 440; McGuire v. Nugent, 103 Mo. 161; Gordon v. Eans, 97 Mo. 603; Wilson v. Lerche, 90 Mo. 473; Bent v. Priest, 86 Mo. 475; Keelon's Heirs v. Keelon, Admr., 20 Mo. 530. Possession obtained through fiduciary relation, change of possession from a friendly to an adverse one, must be brought to knowledge of real owner. Tuggles v. Calteson, 143 Mo. 530; Hamilton v. Boggess, 63 Mo. 233; Comstock v. Eastwood, 108 Mo. 41; Budd v. Collins, 69 Mo. 129; Wilkerson v. Thompson, 82 Mo. 317; Gordon v. Eans, 97 Mo. 603; Morey v. Staley, 54 Mo. 419. Miller took realty as purchaser, with notice of title in another, and he held it as trustee for such other. Truesdell v. Callaway, 6 Mo. 605; Bailey v. Winn, 101 Mo. 649.

*Blodgett & Davis* for respondents.

(1) Conditions subsequent are construed strictly, and the title remains in the grantee until re-entry by the grantor. Ellis v. Kyger, 90 Mo. 600; O'Brien v. Waggoner, 94 Mo. 93; Historical Society v. Academy of Science, 94 Mo. 459; Rudick v. Railroad, 116 Mo. 25; Morrill v. Railroad, 96 Mo. 174; Rush v. Railroad, 97 U. S. 693; Crane v. Hyde Park, 135 Mass. 149; Church v. Grant, 3 Gray (Mass.) 142. (2) Right of entry is a chose in action. The grantor has no estate in land after conditions subsequent are broken. Nothing more than right of entry, which is merely a right or chose in action. De Peyster v. Michael, 6 N. Y. 506; Nicoll v.

Railroad, 12 N. Y. 121; 2 Washburn on Real Property, sec. 954, p. 16; Tiedeman on Real Property, p. 233; Schulenberg v. Harrison, 21 Wall. (88 U. S.) 44; 1 Coke Litt., 218; Upington v. Corrigan, 151 N. Y. 143; Upington v. Corrigan, 29 N. Y. Supp. 1002. (3) (a) The condition was broken in 1875, at the sale of a portion to the railroad, the cause of action then accrued. Guild v. Richards, 16 Gray (Mass.) 326; Railroad v. Cook, 98 Fed. 281. (b) It certainly accrued at a sale of the rest in 1891 to James Miller, and a mere failure to re-enter within ten years is a complete bar. Sec. 4263, R. S. 1899; Phoenix v. Commissioners, 12 How. Pr. 1; Railroad v. Cook, 98 Fed. 281; Bradley v. West, 60 Mo. 41; Littleton v. Patterson, 32 Mo. 365; Powers v. Railroad, 158 Mo. 87. (c) The adverse possession of defendants and their grantors, in good faith and under color of title, is a bar. Sec. 4262, R. S. 1899; Kincheloe v. Tracewells, 11 Gratt. 587. (d) Possession of a part is possession of the whole, under color of title and in good faith. Sec. 4266, R. S. 1899. (4) (a) The strongest equity may be forfeited by laches or abandoned by acquiescence. Swift v. Smith, 79 Fed. 709; Sullivan v. Railroad, 94 U. S. 806; Railroad v. Cook, 98 Fed. 281. (b) A mere right to enforce a forfeiture, which is never favored in law, may be forfeited or waived in the same way. 1 Warvelle, Vendors, sec. 446; Ludlow v. Railroad, 12 Barb. 445; Jones v. McLain, 41 S. W. 151; Kenner v. Contract Co., 9 Bush. (Ky.) 202; Coon v. Bricket, 2 N. H. 163; 2 Washburn, Real Property, sec. 18. (c) Defendants and their grantor had the right to rely upon the deed of 1875 to the railroad as a waiver of the condition. Guild v. Richards, 82 Mass. (16 Gray) 309; Ludlow v. Railroad, 12 Barb. 440. (5) Where the property is not a donation for a charity, and where the consideration clause of the deed expresses solely a money consideration, there can never be a reverter. McRoberts v. Moudy, 19 Mo. App. 26; Gibson v. Armstrong, 9 B. Monroe (Ky.) 489; Church v. Mott, 52 Am.

Dec. 613. (6) The church cannot acquire property upon a valuable consideration and then place it beyond the reach of creditors. Magie v. Church, 13 N. J. Eq. 77; Bushong v. Taylor, 82 Mo. 660; Mills v. Davidson, 35 L. R. A. 113. (7) The deed to Hoke wisely provides that the property be used according to the rules and discipline that may, from time to time, be agreed upon and adopted at the general conference. The discipline gave the trustee authority to sell upon certain conditions and for certain purposes. The conditions and purposes were strictly carried out. Good v. McPherson, 51 Mo. 126; Bushong v. Taylor, 82 Mo. 760; Academy v. Clements, 50 Mo. 167.

BURGESS, P. J.—This is an action of ejectment by the heirs of Thomas Hoke, deceased, against the defendants for the possession of the following described tract of land situated in St. Louis county, to-wit: commencing at a stone on the dividing line between United States surveys 2684 and 2775 in and on the north edge of the St. Charles macadamized road, in the line dividing the land of John B. Cavender (formerly his) and Thomas Hoke (formerly his), thence north 435 feet to a stake, thence south 33 degrees 31 seconds west, 363 feet to a stone, in the north line of the St. Charles road, thence south 56 degrees 31 seconds east with the north line of said road 240 feet to the place of beginning, containing one acre.

Ouster is laid January 1, 1893. The defenses were a general denial, the ten-year Statute of Limitations, waiver of the conditions in the deeds under which defendants derived title, and laches upon the part of plaintiffs in asserting their title to said land.

The cause was tried by the court, a jury being waived. The trial resulted in a judgment for defendants, from which plaintiffs, after an unavailing motion for a new trial, appeal.

The plaintiffs are the lawful heirs of Thomas

Hoke, who, by his warranty deed of date August 3, 1852, and duly recorded August 12, 1858, conveyed one acre of land, located on the St. Charles Rock Road in St. Louis county, to the trustees of the Methodist Episcopal Church South, for the consideration of one hundred dollars, in trust, that they shall erect and build, or cause to be erected and built, thereon a house or place of worship and parsonage for the minister in charge of said church, for the use of the members of the Methodist Episcopal Church South, and to revert to the party of the first part if used for any other purpose, according to the rules and discipline which, from time to time, may be agreed upon and adopted by the ministers and preachers of the said church and their General Conference; that about the time of acquiring the property from the said Hoke the trustees also acquired one acre from John B. Camden, immediately back of and adjoining the Hoke acre; that later on, about the year of 1876, the said trustees acquired a one-half acre from Wesley Browning, immediately back of and adjoining the Camden acre; that by deed, dated in December, 1875, and recorded the same month, the trustees of the said church, by their warranty deed, conveyed a portion of the property, namely, a strip of the southwest corner, to the St. Louis, Kansas City and Northern Railroad Company for the purpose of using it as a roadbed of their railroad. That on the first day of June, 1891, the trustees of said church, by their warranty deed, conveyed the remaining portion of the Hoke acre, the Camden acre and the one-half acre acquired from Wesley Browning to James Miller for three thousand dollars, for the purpose of erecting and building the house of worship on a lot about one mile distant from the original site, which was in a more convenient locality, and because they could not support the church and minister in that situation on account of the lack of members. That the church discipline, at the time of the sale, was as follows:   The trustees, with the consent of the

preacher in charge and the Quarterly Conference, shall have power to sell any church or parsonage property which has grown out of use or which should be removed to another place, the proceeds of which shall be invested in other property at the direction of the Quarterly Conference. The minister expressed his consent in writing, the consent of the Quarterly Conference was also so expressed, the proceeds were used for building a new church. The whole membership of the church was transferred with each one's consent. James Miller exercised acts of ownership over the property by improving the house, trimming trees, repairing fences, repairing sheds, cutting grass and fixing the road.

On September the 1st, 1892, James Miller sold the property to the Central Township Farmers' Club, the defendant in this case, who immediately took possession and claimed the property as their own, made costly improvements on their house, built new sheds and new fences, constructed a gravel road and walk from the rock road to the house around it, have planted trees, cut the grass and have exercised general authority and acts of ownership, claiming it as their own in good faith and under color of title; that they have paid the taxes, together with James Miller, since June the 1st, 1891; that at no time until the date of the present suit—April the 18th, 1902—have the plaintiffs demanded the property or made any entry thereon.

At the instance of the plaintiff, the court declared the law to be as follows:

"The court declares the law to be that the defendants, to establish their defense of title from possession, must show that they and those from whom they derived title held the land in suit continuously, exclusively and adversely for ten years prior to 18 April, 1902, date of filing suit herein, against the plaintiffs, and the mere possession thereof for ten years is not sufficient."

Over the objections and exceptions of plaintiffs, the court refused to declare the law to be as follows:

"The court instructs that if Jas. Miller was trustee of the Methodist Episcopal Church at and from the time he bought the land in suit to his sale thereof to defendant Club and he failed to notify the heirs of Thomas Hoke, deceased, that he claimed title to said land or gave them some certain distinct notice that he held said land adversely to them, then such period of time is not to be counted as a part of the ten years the defendants must show they held the land adversely and continuously to defeat plaintiffs' claim.

"The court instructs that, on the pleadings and evidence, plaintiffs are entitled to recover."

The court, of its own motion, gave the following declaration of law:

"1. If the court should find from the evidence that the Methodist Episcopal Church South, by and pursuant to order or vote of its General Conference, acting in accordance with its rules and discipline, abandoned the use of the property in question as a house or place of worship and parsonage, and removed to another church site, and caused the said property with other property used in connection therewith to be conveyed by deed by the trustees holding the title, to James Miller, absolutely and free from any trust, for the consideration of $3,000, and said church applied the same towards the purchase of such other site or the erection of another church building on said new site and thereupon turned the exclusive possession of said premises over to said James Miller under his said conveyance, and he thereupon caused his said deed to be duly recorded and took such exclusive possession and removed the church furniture therefrom and exercised all the usual acts of ownership over and upon said property, claiming the exclusive ownership thereof; and all of said acts were done as aforesaid prior to March 14th, 1892, then such acts may be taken into consideration in connection with all the evidence in the case in determining whether or not there

was a breach of the condition in the deed to Woodson and others as trustees, and if so when such breach occurred. And from the above facts, if the court believe the same to be established, the court may find that there was such breach and that it occurred prior to March 14, 1892.

"But to constitute such breach the court may find and determine from the evidence that the trustees holding the title to said property by their acts and conduct clearly manifested their intention no longer to comply with said condition, and disavowed the obligation to perform said condition, and intentionally appropriated and applied said property to uses clearly inconsistent with said condition and prohibited thereby.

"2. Although the court should find that there was a breach of the condition in the deed from Thomas Hoke to the church trustees, by reason of which the heirs of Thomas Hoke became entitled to demand and sue for possession of the property in controversy, yet if the court should further find and believe from the evidence that, after such breach and before the commencement of this suit, James Miller and the defendant corporation as his grantee, under their deeds read in evidence, held open, notorious and exclusive possession of said property, continuously, for a period of ten years, claiming exclusive ownership thereof under said deeds, adversely to all the world, then the court should find for the defendants."

To the giving of said declarations of law the plaintiffs excepted at the time.

While the plaintiffs objected and excepted to the above declarations of law given by the court of its own motion, as well as to the action of the court in refusing other declarations of law requested by them, the attention of the court was not called to these matters in the motion for new trial, and they cannot, therefore, be considered upon this appeal. [State v. Pyscher, 179 Mo. 140.]

The record discloses that James Miller acquired title to the property in question under the Hoke deed. By stipulations between the parties, entered into at the time of the trial, it is admitted and agreed that plaintiffs claim title to the land under the Miller deed to the Club, dated June 1, 1891, and recorded September 23, 1892, and that the defendants have been in actual possession of the land and using it for club purposes since 1892.

Plaintiffs contend that James Miller became the trustee under the Hoke deed in 1852, and continued as such until September, 1892, and trustee of the church until November 14, 1895. On the other hand, defendants contend that the condition in the Hoke deed was broken on the first day of June, 1891, when the trustees of said church, by warranty deed, conveyed the remaining part of said land to James Miller. Section 4263, Revised Statutes 1899, provides that "no entry upon any lands, tenements or hereditaments shall be sufficient or valid as a claim, unless an action be commenced thereon within one year after the making of such entry, and within ten years from the time when the right to make such entry descended or accrued." In passing upon this section of the statutes, in Bradley v. West, 60 Mo. l. c. 41, the court said: "This section is the same as it existed under the previous statute; and, as applicable to the limitations of ten years, it is meaningless and fails to provide any new or additional remedy. Whilst it declares that an action may be brought within one year after an entry is made, yet it abridges or limits the time to within ten years from the time when the right to make such entry descended or accrued. As the right to make the entry existed as soon as a cause of action arose in consequence of an adverse holding, the limitation is not in the least extended. The intention was doubtless different, but the statute is thus written." So that, whether entry for condition broken be made under the statute, or as at common law. it must

be done by some positive, unequivocal act, as by bring-
ing suit or by doing something equivalent manifesting
an intention to assert a right in the land, within ten
years after condition broken.  This suit was instituted
April 18, 1902, or more than ten years after the date
of the sale of the land to James Miller.  If, then, the
discipline of the church gave the trustees the right to
sell the property to Miller, and there was no entry upon
the land, such as is contemplated by law, by the plain-
tiffs or by those under whom they claim, within ten
years after the date of such sale, when the condition
was broken, it is plain that they cannot recover.

The universal doctrine is that conditions subse-
quent are not favored in the law, and are strictly con-
strued in favor of the grantee.  [Morrill v. Railroad,
96 Mo. 174; Crane v. Hyde Park, 135 Mass. 149.] Under
such circumstances, it is well settled that there must be
some positive act upon the part of the grantor mani-
festing his intention to reclaim the estate, either by
bringing suit or otherwise.

It may be conceded that the possession of James
Miller and other trustees was not adverse to plaintiffs;
but that it did become adverse to them when the prop-
erty was sold and the deed executed to Miller by the
trustees is, we think, beyond any question.  The execu-
tion of such deed to Miller clearly showed an inten-
tion on the part of the trustees to use the property
for other than church purposes, for which it had not
been used for several years.  This is emphasized by
the fact that the property was sold to Miller absolutely
and unconditionally.  That the title to the property was
in the trustees until the sale to Miller is not disputed,
and upon such sale the title vested in him, his heirs and
assigns, until re-entry by the grantor or his heirs for
condition broken.

The right to enforce a forfeiture may be forfeited
or waived by the grantor.  "He has an option to de-

clare a forfeiture, but this right he may waive either
by express act or passive acquiescence. . . . If he
is not in possession he must make an entry, or by some
act equivalent thereto assert a continual claim, mani-
festing a determination to take advantage of the breach.
. . . Until this has been done the grantee holds the
estate, liable only to be defeated, but not actually de-
termined by a forfeiture." [1 Warvelle on Vendors
(2 Ed.), sec. 446.]

In Kenner v. American Contract Co., 9 Bush (Ky.)
l. c. 210, it is said: "The more modern authorities on
the subject of forfeitures establish the doctrine that
it is with the party in whose favor the condition is,
or who becomes entitled to the estate by reason of the
forfeiture, to say whether the estate shall be forfeited
or not; and although the user, from which the grant of
a public passway may be implied, must have contin-
ued for a period required to toll the right of entry in
ejectment, the waiver of a forfeiture may nevertheless
be inferred by reason of the failure of the party entitled
to the estate to re-enter or assert some claim in a rea-
sonable time, terminating the estate; and particularly
in a case where the party to whom the grant is made is
permitted to use and make valuable improvements on
the premises after the condition is broken. The courts
adjudge the waiver of a forfeiture upon the principle
that the happening of the condition does not *ipso facto*
determine the estate, the same remaining in the gran-
tee, but only subjects it to be defeated at the election
of the grantor; and for the additional reason that for-
feitures are not favored either in courts of law or
equity."

There was evidence to show that the church, in
pursuance of an order or vote of its Quarterly Confer-
ence, acting in accordance with its rules and discipline,
abandoned the property in question and removed to
another church site, and caused the said property, with
other property used in connection therewith, to be con-

veyed by the trustees holding the title to James Miller absolutely and free from any trust, for the consideration of $3,000, and that said money was applied to the purchase of another site and the erection of another church building on said new site; and that said trustees thereupon turned the exclusive possession of said premises over to said Miller; that he caused his said deed to be duly recorded and took exclusive possession of the property, removing the church furniture therefrom and exercising all the usual acts of ownership over and upon said property, and that all of said acts were done prior to March 14, 1892. Under this state of facts, the declarations of law by the trial court were correct, and in accordance with the views which we have expressed.

The judgment should be affirmed. It is so ordered. All concur.