Max **MILLER** and Opal Miller, husband and wife et al., Plaintiffs,

v.

The **ATCHISON, TOPEKA AND SANTA FE RAILWAY CO.**, a Corporation, A T & S F, Inc., a Corporation, Defendants.

No. N70 C 20.

United States District Court, E. D. Missouri, N. D.

April 22, 1971.

E. Richard Webber, Memphis, Mo., Tom Brown, Brown & Phillips, Edina, Mo., for plaintiffs.

Sam D. Parker, Jack W. R. Headley, Joseph E. Stevens, Jr., Kansas City, Mo., Ben Ely and James E. Cary, Ely & Cary, Hannibal, Mo., for defendants.

## MEMORANDUM

WANGELIN, District Judge.

This matter is before the Court on defendant's motion for summary judgment with supporting affidavits and suggestions in support of the motion. Plaintiffs filed suggestions in opposition to the motion and the parties were heard on the matter.

This action was commenced in the Circuit Court of Scotland County, Missouri, and thereafter removed to this Court on the basis of diversity of citizenship and amount in controversy.

For purposes of the questions presented in this motion, there is no dispute as to the facts. Plaintiffs claim to be the heirs of W. G. and Barbara Miller. Defendant is the Atchison, Topeka & Santa Fe Railway Company, the successor to the Chicago, Santa Fe & California Railway Company of Iowa. Plaintiffs are claiming they own a fee simple absolute interest in a portion of land located in Scotland County, Missouri, over which run the main-line tracks of the defendant railroad. Santa Fe has denied the plaintiffs have any interest in the land in question.

By general warranty deed, dated May 20, 1887, W. G. Miller and Barbara Miller, his wife, conveyed certain land to the defendant's predecessor. The deed contains the following language:

"Should said above named Railway or its assigns fail to erect and maintain a depot and bridge on said above-described premises then this Deed to be void.

"And should said above named Railway or its assigns fail to erect and maintain said depot at a point designated by stake No. 2300 and being about 1100 feet from the South West corner of Section 9, Twp. 64, Range 10, along said R.R. survey, or between that stake and a stake numbered 2298 as heretofore agreed upon between said parties to this deed then this deed to be void."

Pursuant to the deed, defendant's predecessor erected a depot and a bridge in 1888. The bridge has been and is being maintained by the railroad. The depot was maintained from 1888 until 1963 when the depot was closed pursuant to order of the Missouri Public Service Commission. The depot was later removed.

Under plaintiffs original pleading, the contentions of the parties on defendant's motion for summary judgment are directed to the issue of the claimed reversion of the *title* to the land in dispute to the plaintiffs under the provisions of the deed. It is the plaintiffs' position that since the railroad no longer maintains a depot, under the terms of the deed, the deed is void and title to the land is vested in them. It is the position of the defendant that title remains in the defendant since defendant maintained the depot for seventy five years and still maintains the bridge.

However, during the argument on the motion, plaintiffs sought leave to amend the complaint to include the allegation that the plaintiffs are the adjoining landowners. Plaintiffs argued the theory that under the holdings in Brown v. Weare, 348 Mo. 135, 152 S.W.2d 649 (1941) and Quinn v. St. Louis-San Francisco Railway Co., 439 S.W.2d 533 (Mo. En Banc 1969), the railroad acquired only an easement to the land in 1887, and that defendant, having abandoned the depot in 1963, the *use* reverted to the adjoining landowners.

The Court finds the *Brown* case and the *Quinn* case inapposite. The facts are clearly distinguishable. The language of the deed in the present case is not similar to the deeds in the *Brown* and *Quinn* cases. But more importantly, the present case lacks the total abandonment present in *Brown* and *Quinn*. As the following discussion indicates, the sole

issue to be determined on this motion is whether title to the land in question reverted to the heirs of W. G. and Barbara Miller in 1963 when the defendant ceased to maintain a depot.

■ At the outset, the Court notes that conditions subsequent and reverters are not favorites of the law. In Duncan v. Academy of Sisters of the Sacred Heart, 350 S.W.2d 814 (Mo.1961), the Missouri Supreme Court discussed the requirements for a determinable fee, at p. 816:

"The grant in such a case is not upon a condition subsequent, and no re-entry is necessary; but by the terms of the grant the estate is to continue until the happening of some event. And upon the happening of said event, the estate will cease and determine by its own limitation. The proper words for the creation of such an estate are, 'until,' 'during,' 'so long as,' and the like. * * *"

The deed in the present case uses no such words. In fact, the habendum clause of the deed contains the word "forever", and not the words "until", "so long as", "while" or "during".

The Court in the Duncan case pointed out that the distinctive characteristic of a conveyance of an estate upon condition subsequent is the existence of a provision for an entry upon breach of the condition. There is no provision for re-entry in the deed in the present case.

■ It is the opinion of this Court that the deed in the present case did not convey a determinable fee or an estate upon condition subsequent. In any event, it is the further opinion of this Court that the railroad has complied with the provisions of the deed.

As noted above, the railroad maintained the depot for seventy five years and is still maintaining the bridge. The case most in point is Bagby v. Missouri-Kansas-Texas R.R. Co., 351 Mo. 79, 171 S.W.2d 673 (En Banc 1943). This was an action to try the title to real estate which had previously been conveyed to defendant railroad for the purpose of erecting and maintaining car shops thereon. From a judgment for the defendant railroad sustaining a demurrer, plaintiff appealed. The Missouri Supreme Court, En Banc, affirmed. The facts showed that the property had been conveyed many years previously to the railroad by a deed executed by plaintiffs' predecessors, and that the sole consideration therefor was the establishment and maintenance of permanent car and coach shops on the land. After maintaining the shops for *over 40 years* the defendant closed them and the plaintiff contended this constituted a violation of the deed and vested title to the property in him. The Supreme Court held for the railroad on two points. First, the railroad had kept its part of the deed by maintaining the car shops at their location for 40 years. On this point, the Court, in quoting from Texas & Pacific R. Co. v. City of Marshall, 136 U.S. 393, 10 S.Ct. 846, 34 L.Ed. 385, says on pages 675–676:

"It appears to us, so far from this, that the contract on the part of the railroad company is satisfied and performed when it establishes and keeps a depot, and sets in operation car-works and machine-shops, and keeps them going for eight years, and until the interests of the railroad company and the public demand the removal of some or all of these subjects of the contract to some other place. This was the establishment at the point of the things contracted for in the agreement. It was the fair meaning of the words 'permanent establishment,' as there was no intention at the time of removing or abandoning them. The word 'permanent' does not mean forever, or lasting forever, or existing forever. The language used is to be considered according to its nature and its relation to the subject-matter of the contract, and we think that these things were permanently established by the railway company at Marshall."

Secondly, the Court decided that the railroad had paid a valuable consideration for the land and that the fee thereto

was vested in the railroad. The Court states on page 676:

"In the case before us plaintiffs' petition stated that the land was conveyed to the defendant on condition that it build its car and coach shops thereon. The company did so. That constituted a valuable and substantial consideration. (Citations omitted) * * * "

A similar case is Bryan v. Louisville & N. R. R. Co., 244 F. 650 (8th Cir., 1917). This was a suit by plaintiff to recover from the railroad damages which plaintiff alleged resulted from the railroad's abandonment of a portion of its main line in Alabama. The suit was brought in Missouri. The Court held that 40 years of maintaining the railroad was sufficient compliance even if there was an agreement originally that the consideration for deeding the right of way to the railroad was that the railroad would run its tracks on the land. The Court states on page 659:

"The right of way deeds or contracts, after reciting the money consideration, contained the following language: 'And for further consideration of their building and erecting and running their railroad on and along' the described parcel of land. Not stopping to consider whether these recitals are conditions subsequent or covenants running with the land, we think that under the decision of the United States Supreme Court in Texas & Pacific Ry. Co. v. Marshall, 136 U.S. 393, 10 Sup.Ct. 846, 34 L.Ed. 385, the agreement must be held to have been complied with under the facts in this case. The South & North did build its line of road on and along the lands specified and maintained it for 40 years. It was decided in the Marshall Case, where the contract was to permanently locate car-works and machine shops in the city of Marshall, that the word 'permanent' did not mean forever, lasting forever, or existing forever. In this case the railroad company had complied with its agreement for eight years, and it

was held to be a substantial compliance with the contract."

Upon the facts of this case, title in fee simple absolute is vested in the railroad. The defendant's motion for summary judgment will be granted.